(November 18, 1982)

■ PAHLAVI FOUNDATION, Appellant, v METROPOLITAN LIFE INSURANCE COMPANY, Respondent. — Order, Supreme Court, New York County (Gabel, J.), entered on April 14, 1981, which granted the defendant's motion for summary judgment, is unanimously affirmed, with costs. Although we affirm the determination made at Special Term, we employ a different analysis to arrive at the conclusion that no issue of fact exists so as to warrant a trial of this matter. Through a series of leasing arrangements, the plaintiff's predecessor in interest, 650 Fifth Avenue Associates (Associates), acquired the air rights to properties located at 640 Fifth Avenue and 6-8 West 52nd Street. These properties were owned by defendant and abut the subject property, 650 Fifth Avenue, on the southerly and westerly property lines, respectively. After Associates acquired these air rights, 650 Fifth Avenue was sold to the plaintiff "subject to" the above-mentioned agreements. Article seventh thereof provides in pertinent part that: "Tenant [plaintiff] shall be permitted to make any changes in or alterations to the existing building or in that portion of the Demised Premises described [as 650 Fifth Avenue] and *shall be permitted to demolish such existing building on such portion of the Demised Premises and erect a new building in its place and stead, provided that* (1) all such changes, alterations and construction shall at all times be done in compliance with the provisions of law and regulation of all federal, state and municipal authorities having jurisdiction, and (2) *Landlord [defendant] shall be indemnified and saved harmless by Tenant [plaintiff] against any and all costs, claims or damages* arising in any way therefrom". (Emphasis supplied.) During the course of demolition of the existing structure and excavation for the new building, it was discovered that the foundations of defendant's buildings were outside of their record title lines and within the record title lines of plaintiff's property. Defendant, at its own expense, removed these encroachments and, thereafter, plaintiff commenced the within action for construction delay damages and loss of rent and profits. Defendant answered, asserting that the complaint failed to state a cause of action and in the third affirmative defense maintained that plaintiff, pursuant to article seventh of the lease, agreed to indemnify and hold defendant harmless from any and all claims. Special Term, relying on other provisions in the lease, granted defendant summary judgment. Special Term rejected defendant's claim that the indemnification clause barred this action and specifically found that "there is some ambiguity as to whether the indemnification clause * * * was intended to apply to all claims whatsoever between the parties or only as to claims arising from a failure to

comply with building codes and regulations." We disagree and find that the indemnification clause is sufficiently broad to exonerate defendant from liability. In reviewing an indemnification clause, where it is alleged that the party seeking indemnification was negligent and caused the now-complained-of wrong, courts must look at both the intent and scope of the subject agreement. However, the contract between the parties need not precisely declare that the active negligence of the indemnitee is covered by this agreement. "[I]ndemnification has been permitted under contractual provisions though the language of those provisions fell short of expressly stating that its coverage extended to the active negligence of the party to be indemnified where * * * that appears to have been the unmistakable intent of the parties." (*Kurek v Port Chester Housing Auth.,* 18 NY2d 450, 456). The clause in the instant case requires the plaintiff to indemnify the defendant against "any and all * * * claims or damages arising in any way" from the demolition and subsequent construction of plaintiff's building. "Since the plain meaning of these words fairly includes the liability for the active negligence of [defendant], we see no reason why more should be required to establish the unmistakable intent of the parties. A contrary construction would result in the conclusion that the clause was a nullity. Surely, this could not have been the intent of the parties" (*Levine v Shell Oil Co.,* 28 NY2d 205, 212-213). The unmistakable intent of these parties to this action, as expressed in the lease agreements, is to indemnify the defendant for any and all claims, even if it be determined that defendant was actively negligent. The parties contemplated that in exchange for the air rights over defendant's buildings, the construction of a new building would, under no circumstances, result in any expense or liability to defendant. The meaning of this clause is plain and to ascribe to it a different interpretation than here arrived at would impose a strained construction not contemplated by the parties and would serve to frustrate their unmistakable intent. Concur — Murphy, P. J., Sullivan, Ross, Bloom and Milonas, JJ.